NOT FOR PUBLICATION                                                                                  (Doc. No. 26)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

AMERICAN SEATING COMPANY,     :
                              :
            Plaintiff,        :
                              :   Civil No. 11-53 (RBK/AMD)
       v.                     :
                              :   **OPINION**
ARCHER PLASTICS INC.,         :
d/b/a Archer Seating Clearinghouse and   :
Archer Seating,               :
            Defendant.        :
---

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of American Seating Company ("Plaintiff" or "American Seating") for summary judgment on its breach-of-contract claims against Archer Plastics, Inc. ("Defendant" or "Archer"). Because the Court finds no genuine issue of material fact as to the existence of two agreements between Plaintiff and Defendant, or as to Defendant's breach of those agreements, Plaintiff's motion is granted as to Defendant's liability for contract damages, with the amount of damages to be determined later.

**I.    BACKGROUND**

The instant lawsuit arises out of a contract dispute between two companies that install, remove, and/or sell stadium seating. Plaintiff entered into one contract to supply new stadium seats at Oriole Park at Camden Yards, located in Baltimore, Maryland, and another agreement to supply new seating at Foley Field at the University of Georgia, located in Athens, Georgia. Decl. of Chuck Bailey ("Bailey Decl."), Pl.'s Br. in Support of Summ. J. ("Pl.'s Br."), ¶ 2. In order to do so, Plaintiff needed first to remove the existing seats and logo ends from both

1

stadiums.  Id. at ¶ 3.  Plaintiff approached Defendant in connection with the seat and logo end removal.  Id.  Plaintiff claims that it entered into two agreements with Defendant (the "Camden Yards Agreement" and the "Foley Field Agreement"), which provided that Defendant would remove all of the seats and logo ends in each of those stadiums.  Id.  Plaintiff claims that the Camden Yards Agreement provided that Defendant would pay Plaintiff $8.50 per seat for removal of all seats at Camden Yards, and $18.18 per logo end, and that Defendant would keep the removed seats for resale to third parties.  Pl.'s Br., 1-2.  The Foley Field Agreement, Plaintiff contends, was an agreement memorialized in a letter in which "Archer Seating agreed to remove stadium seating and aluminum benches from Foley Field at no cost to American Seating."  Id. at 7.

Defendant argues that no agreement formed between itself and Plaintiff regarding seat removal at Camden Yards or Foley Field.  Defendant indicates that what Plaintiff refers to as the "Camden Yards Agreement" was "an unsigned purchase order," which was "understood by Plaintiff and [Defendant] to be nothing more than a proposal."  Def.'s Br. in Opposition to Summ. J. ("Def's Br. Opp."), 1-2.  Furthermore, Defendant indicates that the "purchase order" did not specify how many seats would be removed from Camden Yards, and thus did not bind Defendant to remove and purchase of all seats in the stadium.  However, notwithstanding Defendant's claims that no agreement existed between itself and Plaintiff to remove seats from Camden Yards, the parties do agree that Defendant did remove some seats and logo ends from that stadium, and paid Plaintiff $187,266.66 for the items removed.  Pl.'s Statement of Undisputed Material Facts ("Pl.'s SUMF"), ¶ 19; see also Def.'s Responsive Statement of Material Facts ("Def.'s RSMF"), ¶ 19.  Moreover, there is no dispute that the parties eventually agreed on a price of $8.50 per seat, which is what Defendant paid Plaintiff for the seats it

actually removed. Pl.'s SUMF, ¶ 15; Def.'s Br., 12. Accordingly, what Defendant appears to be arguing is that the proposals sent on October 15 and October 21, 2009, which provided for "removal of <u>the existing chairs</u>," were not binding agreements. Pl.'s Br., Exs. 2, 4. Rather, Defendant appears to claim, the only document binding it to performance at Camden Yards was a Purchase Order dated November 5, 2009, which, Defendant argues, did not specify the quantity of seats or logo ends that Defendant would remove. Pl.'s Br., Ex. 5.

Moreover, as for the Foley Field Agreement, Defendant argues that there was no binding contract, but rather "simply a letter of possible interest, nothing more." <u>Id.</u> at 2. Defendant claims that it "was not aware that Plaintiff intended to rely on Archer Plastics['s] gesture to assist when bidding for the Foley Field contract." <u>Id.</u> The parties agree that Defendant did not remove anything from Foley Field. Pl.'s SUMF, ¶ 21; <u>see also</u> Def.'s RSMF, ¶ 21.

Plaintiff alleges that Defendant breached the Camden Yards Agreement by performing only partially, and that Defendant breached the Foley Field Agreement by failing to perform altogether. Defendant responds that there is no breach because it was under no obligation to remove all seats from Camden Yards, and because an Agreement was never formed with respect to Foley Field. Defendant further argues Plaintiff breached express warranties because the seats and logo ends did not conform with what was promised to Defendant. Finally, Defendant argues that Plaintiff failed to mitigate its damages in connection with any breach of contract.

## II. STANDARD

### A. Choice of Law

Because the Court hears this case pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, it must apply state substantive law and federal procedural law. <u>Gasperini v. Ctr. for Humanities</u>, 518 U.S. 415, 427, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996) ("Under the Erie doctrine, federal courts sitting in

diversity apply state substantive law and federal procedural law."). The parties assume that New Jersey law governs, and, indeed, it is the substantive law of New Jersey that the Court applies here.[1]

### B. Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to

---

[1] Federal courts sitting in diversity "determine which state's substantive law applies by applying the choice-of-law rules of the jurisdiction in which the court sits." Garcia v. Plaza Oldsmobile LTD., 421 F.3d 216, 219 (3d Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). New Jersey follows the Restatement (Second) of the Conflict of Laws, which indicates that a matter is governed by the law of the state with the "most significant relationship" to the issue before the court. P.V. v. Camp Jaycee, 197 N.J. 132, 962 A.2d 453, 457 (2008). Here, the parties point to no state other than New Jersey whose law would potentially apply to this matter; accordingly, we assume, as the parties have, that New Jersey bears the most significant relationship to the issues now before us.

survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

#### A. Camden Yards

Defendant argues that, Plaintiff's claims notwithstanding, what Plaintiff refers to as the Camden Yards Agreement was a "purchase order . . . understood by Plaintiff and Archer Plastics to be nothing more than a proposal." Def.'s Br. Opp., 1. Two proposals appear to have preceded the Purchase Order to which Defendant refers. The first proposal is an October 15, 2009 letter printed on Defendant's stationery, which was written by Steve Archer (President of Archer Seating Clearinghouse) and addressed to Chuck Bailey, formerly the National Sales Manager for the Sports Division of American Seating. Pl.'s Br., Ex. 2. The proposal lists seven conditions governing the proposed purchase of seats at Oriole Park at Camden Yards by Defendant. Id. A revised version of that proposal was also created on Defendant's stationery and addressed to Plaintiff on October 21, 2009. Pl.'s Br., Ex. 4. Both proposals indicate that Defendant would

5

pay $7.50 per seat for removal from Camden Yards. Pl.'s Br., Exs. 2, 4. The parties agree that they continued to negotiate on this price term. Pl.'s SUMF, ¶ 14; Def.'s Br. Opp., 12. There is no dispute that they eventually agreed on a price of $8.50 per seat, which is what Defendant paid Plaintiff for the seats it actually removed. Pl.'s SUMF, ¶ 15; Def.'s Br., 12.

A Purchase Order generated on Defendant's letterhead, addressed to Plaintiff's representative, was submitted on November 5, 2009. Pl.'s Br., Ex. 5. The Purchase Order indicates a quantity of 45,000 "Surplus Stadium Seats from Oriole Park," at a price of $8.50 per seat. Id. It also indicates a quantity of 5,500 "Logos," at $18.18 each. Id. Accordingly, the entire Purchase Order totals $482,500.00. Id. Defendant points out that, for the seats, the Purchase Order indicates the following: "Quantities subject to correction as field information is gathered." Id. Likewise, for the logo ends, the purchase order indicates: "Quantities subject to correction, estimates for now." Id. Thus Defendant argues that the Purchase Order did not contain "a definitive description or count of the items to be removed." Def.'s Br. Opp., 12. Moreover, Defendant argues, because the Purchase Order did not include terms that had been drafted in the October 15, 2009 and October 21, 2009 proposals, which Plaintiff's representative "mandated must be included in the agreement," the Purchase Order did not constitute an agreement to purchase the existing seats. Id. In fact, Defendant appears to deny that that the Purchase Order constitutes any kind of binding agreement at all.

Despite Defendant's argument that no binding agreement was formed with Plaintiff, both Plaintiff and Defendant agree that the removal of seats at Camden Yards was to take place in two phases. Def.'s Br., 12; Pl.'s SUMF, ¶ 14. The evidence reinforces this, as Defendant sent the Purchase Order to Plaintiff as an attachment to an email that read, "here is the PO for <u>both phases</u>." Pl.'s Br., Ex. 5 (emphasis added). Plaintiff argues that the seats that Defendant did

6

remove from Camden Yards, and paid Plaintiff a total of $187,266.66 for, constituted the first phase of seat and logo end removal.  Plaintiff also points to an email it received from Steve Archer on April 19, 2010, indicating that his business "is in real bad shape from the Camden Yards deal."  Email from Steve Archer to Chuck Bailey, April 19, 2010, Pl.'s Br., Ex. C.  That email further explained, "[f]or the batch this fall I don't know what will happen unless a miracle occurs where we sell a lot of seats."  Id.  Therefore, according to Plaintiff, in this email Defendant "acknowledged that phase 2 was approaching and expressed concern about its ability to perform."  Id.

Although Defendant responds by arguing that it cannot be accountable for removal and purchase of the remaining seats because no agreement was ever formed between American Seating and Archer Seating, Defendant's protest that the Purchase Order did not constitute an agreement to is belied by Defendant's own performance.  Defendant offers no explanation as to why, if Archer Seating had not agreed to remove and pay for seats and logo ends from Camden Fields, it then proceeded to do so.  Moreover, Defendant does not explain—nor can it—why it would have paid Plaintiff according to the prices detailed in the Purchase Order, if there had been no agreement to purchase and remove seats at that price.

"A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."  N.J. Stat. § 12A:2-204.[2]  In this case, the conduct of Defendant—namely, performance of the contract— irredeemably undermines its argument that no contract was formed with Plaintiff.

---

[2] Because the agreement at issue concerns both a service—removal of the stadium seats—and sale of goods— Defendant's purchase of the seats—it is a mixed contract for goods and services.  "When a contract is a mixed contract for goods and services, a court must determine whether the sales or services aspect predominates."  Custom Communications Eng'g, Inc. v. E. F. Johnson Co., 269 N.J. Super. 531, 537, 636 A.2d 80 (App. Div.1993).  "The legal analysis most frequently employed when courts are faced with such mixed contracts is that Article 2 of the UCC is applicable if the sales aspect predominates and is inapplicable if the service aspect predominates."  Id. (internal quotation marks omitted).  The issue of whether the goods aspect or services aspect predominates is a

Accordingly, the only dispute presented to this Court concerning the Camden Yards purchase is whether or not the agreement to remove and purchase seats and logo ends at Camden Yards required Defendant to remove and purchase <u>all</u> seats and logo ends.  The October 15, 2009 and October 21, 2009 proposals both offer persuasive evidence in support of Plaintiff's argument that the agreement required removal of all seats.  As the New Jersey law on such parol evidence provides,

> [t]erms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented . . . by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

N.J.S.A. § 12A:2-202(b).  The October 15, 2009 and October 21, 2009 proposals both make reference to "removal of the <u>existing</u> chairs."  That language does not contradict the later Purchase Order, but rather "explain[s] or supplement[s]" its terms by means of an additional term—"existing"—which, when added to the Purchase Order, remains consistent with it.

Accordingly, the Court considers the October 15 and October 21 proposals in order to establish the meaning of the Purchase Order—and these strongly suggest that the Purchase Order effectuated two weeks later also contemplated the removal of the existing chairs from the stadium.  That is, the October proposals create significant doubt that the phrase "[q]uantities subject to correction," included in the Purchase Order, should be interpreted to mean that Defendant was offering to buy as many seats as it desired.  Rather, the proposals suggest that

---

question of fact.  Quality Guaranteed Roofing, Inc. v. Hoffmann-La Roche, Inc., 302 N.J. Super. 163, 166 (App. Div. 1997).  In the instant case, the Court finds that the sales aspect predominates, because the contract provided for payment from Defendant to Plaintiff.  Were the services aspect (that is, removal of seats and logo ends) to predominate, Defendant would be both providing Plaintiff with the service of removing seats, <u>and</u> paying Plaintiff for the opportunity to do so.  More logically, it would seem that the object of the agreement was Defendant's acquisition of the removed seating, since Defendant paid Plaintiff for the seats.

Plaintiff's interpretation—that the number of seats to be purchased was "subject only to adjustment based on a final count of the seating in the stadium"—is the correct understanding of the contract.  Pl.'s Reply Br., 2.

While the terms of the October 15 and October 21, 2009 proposals create serious doubt as to Defendant's interpretation of the November 5 Purchase Order, on their own that doubt would not be sufficient to support a determination that no genuine issue of material fact existed as to the terms of the Camden Yards Agreement.  However, another aspect of the agreement eliminates any residual factual dispute that might remain after contemplation of the "existing chairs" language of the October 15 and October 21 proposals.  Specifically, Defendant admits that it agreed to carry out the seat removal and purchase in two phases, and Defendant also acknowledged in its April 19, 2010 email to Plaintiff that it was responsible for removing and purchasing another set of seats ("the batch this fall"), which Defendant doubted it would be able to do.  Email from Steve Archer to Chuck Bailey, April 19, 2010, Pl.'s Br. Ex. C.  Moreover, Defendant does not argue that it ever removed and purchased seats after the first phase.  Accordingly, it is clear that one-time removal and purchase of seats from Camden Yards was not complete performance of what was agreed upon the Purchase Order.  Combined with the evidence (from the October 15 and October 21, 2009 proposals) that Plaintiff and Defendant were negotiating for removal of all existing seating at Camden Yards, Defendant's acknowledgment that a second phase of seat removal and purchase was required leaves no genuine issue as to the fact that Defendant agreed to remove all existing seats, and thus breached the Camden Yards Agreement by performing only partially.

Defendant attempts to establish a genuine issue of material fact as to its liability for breach of contract through the Certification of Steven Mr. Archer, owner of Archer Plastics, Inc.

9

"Archer Cert." Mr. Archer states that Plaintiff asked him for a Purchase Order so that Plaintiff "would have something for his file." Id. at ¶ 3. He further states that the Purchase Order intended "to set the price for the seats I would be removing but not to bind [Defendant] to remove all of the seats." Id. Mr. Archer avers that he and Plaintiff's representative, Chuck Bailey, "both understood that [Defendant] did not have the ability to pay for all of the seats at Camden Yards," and that the agreement was that, "[i]f [Defendant] was able to sell the first batch of seats from phase one, [Defendant] would have been able to purchase the seats in phase two." Id. at ¶ 4.

To begin with, as Plaintiff points out, Mr. Archer's Certification attempts to introduce parol evidence as to the parties' understanding of the Purchase Order. New Jersey law explains that terms contained within "confirmatory memoranda" of an agreement "may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement . . . ." N.J.S.A. § 12A:2-202. Mr. Archer's Certification would tend to contradict the Purchase Order, because Mr. Archer states that the second phase of the removal and purchase was optional, whereas the Purchase Order indicates that 45,000 seats and 5,500 logo ends would be removed and purchased. Moreover, Mr. Archer's Certification also contradicts the October proposals, which provide for removal and purchase of existing chairs, and contain no language suggesting that the number of seats purchased would be subject to the number resold after phase one.

Furthermore, even apart from the fact that Mr. Archer's Certification is likely barred by New Jersey statute, it must be noted that there is no evidence in the record—other than Mr. Archer's Certification—which supports the claim that Defendant would be freed from completing phase two of the seat removal and purchase if it was unable to sell seats from phase one. As the Supreme Court has explained, "[w]hen opposing parties tell two different stories,

10

one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).  Mr. Archer's email to Chuck Bailey, which indicated that "[f]or the batch this fall I don't know what will happen unless a miracle occurs where we sell a lot of seats," does not indicate that purchasing "the batch this fall" was an optional undertaking that Defendant had the right not to perform.  Pl.'s Br., Ex. C.  In fact, evidence of such an arrangement is found nowhere in record.  Thus the Court finds that no genuine issue of material fact is raised by Mr. Archer's Certification as to the Camden Yards Agreement.

**B. Foley Field**

On January 19, 2010, Defendant sent a letter to Plaintiff indicating that, "[b]ased on the photos [of the old seats in Foley Field] alone, and some research on Foley Field, we will commit to removing those seats at no cost to American Seating."  Pl.'s Br., Letter from Steve Archer to Chuck Bailey, Jan.19, 2010 ("Foley Field Letter"), Ex. 6.  However, in Defendant's April 19, 2010 letter to Plaintiff, Defendant indicated that "I can't remove the seats in Athens GA [Foley Field] for free, just don't have the money to do it or the sales for the seats."  Pl.'s Br., Email from Steve Archer to Chuck Bailey and Fritz Owen, Apr. 19, 2010, Ex. C.  Plaintiff contends that Defendant breached a binding agreement in failing to remove the seats at Foley Field.  Defendant rejoins that Mr. Archer "never intended [the January 19 letter] to be a binding contract."  Def.'s Br. Opp., 12.

Under New Jersey law, the basic elements of a valid contract are: (1) an offer by the promisor to act or forebear in some way; (2) acceptance by the promisee of the promisor's offer; and (3) fair consideration paid by the promisee in exchange for the promisor's performance.  See

Am. Handkerchief Corp. v. Frannat Realty Co., 17 N.J. 12, 17 (1954).  In this case, all elements of a valid contract are present.  As the January 19, 2010 letter indicates, Plaintiff sent Defendant photographs of the Foley Field seats (aluminum benches and American Seating Z-Standards), and offered the seats to Defendant in exchange for their removal.  Foley Field Letter.  The January 19 letter also explains that Defendant accepted Plaintiff's offer.  See id. (indicating that "we will commit to removing those seats . . .").  Finally, Plaintiff promised Defendant the seats themselves, in exchange for Defendant's seat-removal services.

Although Defendant argues that a factual question remains as to "whether Archer Plastics manifested an intent to be bound" to the agreement it assented to in its January 19, 2010 letter, it is clear that an agreement to remove the benches and standards at Foley Field was formed.  As the New Jersey Supreme Court has explained, "[m]ere speculation as to the probabilities of an intention is not enough; the evidence must be such as can lead a reasonable man to a distinct conclusion."  Krosnowski v. Krosnowski, 22 N.J. 376, 386-87, 126 A.2d 182, 187 (1956) (internal quotation marks omitted).  In the instant matter, Defendant has not offered evidence that could lead a reasonable factfinder to the "distinct conclusion" that Defendant's written correspondence with Plaintiff indicating that it would "commit" to removing the Foley Field seating was not a binding agreement.  Defendant has presented only the certification of Steven Archer, which states that "the terms of the removal such as the date to remove the seats or any other essential terms" were never discussed between Plaintiff and Defendant, so that no binding contract was formed between them.  Archer Cert., Def.'s Br. Opp., ¶ 13.  However, Mr. Archer's January 19, 2010 letter directly contradicts his Certification, creating a "distinct conclusion" that is the opposite of what Defendant now argues.  The Letter indicates that Defendant would remove the seats "[t]ime frame circa June 2010 approx."  Foley Field Letter.  Moreover, it

12

provides for the removal of 1,200 approx. aluminum benches and 1,800 American Seating Z-Standards with 406 plastic as per photos . . . ." Id. Finally, the letter states that "[t]he inclusion of the aluminum benches in our project is essential." Id.

Because Mr. Archer's Certification is the only evidence offered to contradict the otherwise lucid evidence that a contract was created concerning the seats at Foley Field, and because Mr. Archer's Certification is directly contradicted by the record, there is no genuine issue of material fact as to the fact that the Foley Field Agreement existed, and that the Agreement was breached by Defendant's nonperformance.

### C. Plaintiff's Alleged Breach of Express Warranties

Defendant also argues that, if a contract was formed between Plaintiff and Defendant, Plaintiff breached the express warranty "that the goods shall conform" to the agreement. Def.'s Br., 14 (quoting N.J.S.A. 12A:2-313(1)(a)). That is, Defendant argues, Plaintiff represented to Defendant that "the Baltimore Orioles organization would help market the seats," but that "the Baltimore Orioles organization refused to do so." Def.'s Br., 15.[3] Moreover, Defendant argues that "many of the seats, for the most part, proved to be so deteriorated through use and weathering that they were not saleable." Id. Defendant also argues that "many of the seats were redirected or angled seats which are not saleable." Id. Defendant states that it "informed American Seating of the non-conformities and was told it would receive a credit," but that "[t]o date, no credit has been received for the non-conforming seats." Id. at 15. Therefore, Defendant argues, it is "entitled to recover as damages the difference at between [sic] the value of the goods

---

[3] Plaintiff argues that it "was not able to review the substance" of Defendant's warranty argument, because page 15 of Defendant's responsive brief was omitted from its electronic filing. Pl.'s Reply, 9. In the future, Plaintiff might consider the simple solution of contacting its adversary for such missing pages, as the Court did when reviewing Defendant's Opposition.

13

accepted and the value they would have had if they had been as warranted," pursuant to New Jersey statute. Id. at 15 (citing N.J.S.A. 12A:2-714).

However, as Plaintiff points out, the statute in question provides a cause of action for damages in contract; it does not elucidate a contract defense. See N.J.S.A. 12A:2-714 (entitled "Buyer's damages for breach in regard to accepted goods"). Defendant has not filed breach-of-warranty claims against Plaintiff in the instant matter. Therefore, the alleged breach of express warranty has no bearing on the issues in this case. Furthermore, although Defendant argues that many of the seats at Camden Yards were not saleable because they had deteriorated or were redirected, the record suggests that Defendant knew this at the time the Camden Yards Agreement was formed. See Email from Steve Archer to Chuck Bailey, Nov. 16, 2009, Def.'s Br., Ex. 4 (referring to "the 6,000 seat bottoms we have to pay to remove but cannot use, same with the 4,000 approx. redirected"); see also Email from Steve Archer to Chuck Bailey, Nov. 19, 2009 (attaching Purchase Order for both phases). Accordingly, Defendant's argument concerning express warranties is meritless.

**D. Mitigation**

Defendant contends that Plaintiff had a duty to mitigate its damages with respect to both Agreements, and that, for both Agreements, Plaintiff failed to do so. Specifically, Defendant argues that, although it "informed Plaintiff of its inability to remove any more seats from Camden Yards on April 19, 2010 . . . . Plaintiff sat until June 1, 2010 before responding." Def.'s Br. Opp., 17. According to Defendant, Plaintiff then failed to take measures that would have allowed it to recoup a larger profit, even though Defendant itself advised Plaintiff of such opportunities.[4] Id. at 17-18. Defendant also argues that it informed Plaintiff that it would not

---

[4] Moreover, Plaintiff acknowledged in an internal email dated April 19, 2010 that it should consider another company for removal of the seats from Foley Field, since Defendant was unlikely to complete that project. See

14

remove seats from Foley Field at no cost on April 19, 2010.  Id. at 18.  Defendant indicates that, although Plaintiff had at that time received another offer for free seat removal from a different company, nevertheless Plaintiff took no action for several months.  Id.

Indeed, under New Jersey law, it is well-settled that "parties injured by a breach of contract have a common law obligation to take reasonable steps to mitigate their damages." State v. Ernst & Young, L.L.P., 386 N.J. Super. 600, 902 A.2d 338, 348 (App. Div.2006).  As the New Jersey Superior Court, Appellate Division explained,

> [o]nce a party has reason to know that performance by the other party will not be forthcoming, he is ordinarily expected . . . to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise  . . . .  The amount of loss that he could reasonably have avoided by . . . making substitute arrangements . . . is simply subtracted from the amount that would otherwise have been recoverable as damages.

Id. (quoting Restatement (Second) of Contracts, § 350 cmt. b (1981)).  "[T]he burden of proving facts in mitigation of damages rest[s] upon the party breaching the contract."  Ingraham v. Trowbridge Builders, 297 N.J.Super. 72, 687 A.2d 785, 791 (App. Div.1997) (quoting Cohen v. Radio-Electronics Officers, 275 N.J.Super. 241, 645 A.2d 1248, 1259 (App. Div.1994)).

Accordingly, as Defendant argues, Plaintiff had a duty to mitigate the damages incurred as a result of the breach of both Agreements.  Because Defendant has pointed to specific facts in support of its argument that the damages for Defendant's breach could have been lower than those now claimed by Plaintiff (e.g., the lapse in time between when Defendant informed Plaintiff of its inability to perform, and Plaintiff's attempts to find another buyer; and the difference between the amount Plaintiff claims to have earned from the sale of the seats to third-

---

Email from Chuck Bailey to Nelson Wilfore (April 19, 2010, 9:47), Pl.'s Br. Summ. J., Ex. C.  Plaintiff also acknowledged the same with regard to the Camden Yards Agreement: "Archer may bail-out this fall on the second phase of Camden it sounds like.  We should begin looking for an alternative for this as well."  Id.

party buyers, and the amount Defendant projects that Plaintiff should have earned), the Court finds a genuine issue of material fact as to whether or not Plaintiff mitigated damages.

Accordingly, while summary judgment is granted as to Defendant's liability, it is denied as to the amount of damages in this matter.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment as to liability is **GRANTED**.  An accompanying Order shall issue today.


Date: 7/18/2012                                                           /s/ Robert B. Kugler
                                                                          ROBERT B. KUGLER
                                                                          United States District Judge